JjPHILIP C. CIACCIO, Judge Pro Tem.
Defendant/appellant Modern Auto Wreckers, Inc., appeals the judgment of the trial court in favor of plaintiff/appellee DM & M Auto Sales, awarding DM & M five thousand, nine hundred fifty-five dollars in damages, plus attorneys fees of four thousand dollars. Upon our review of the record, we affirm in part and reverse in part.
Plaintiff DM & M Auto Sales purchased wrecked vehicles and repairs them for resale. DM & M’s general practice was to buy cars with good title, as opposed to a salvage title; a vehicle is normally issued a salvage title when the cost to repair the damages to that vehicle exceed 75% of its value. In order to sell a vehicle with a salvage title, the seller must first disclose this fact to a prospective purchaser, as the vehicles no longer have manufacturer’s warranties and are of lesser value.
Defendant Modern Auto purchases and sells wrecked vehicles. Some are sold for salvageable parts, others for the metal; still others are sold to individual buyers or companies such as DM & M. These two companies had done business together several times previously.
pin 1995, DM & M partner Robert Wir-strom went to Modern Auto to examine the vehicles there; among those he considered buying were a Mercury Villager and a Saturn. Wirstrom testified at trial that, when he asked Modern Auto representative Rene Bourquard whether the cars had good title, Bourquard indicated that they did. This testimony was corroborated by a friend of Wirstrom’s who had accompanied him to Modern Auto that day.[1]
The Villager was purchased on February 22, 1995 for $4800.00; the Saturn was purchased on December 4, 1995 for $4874.10. When Wirstrom purchased these vehicles, Bourquard provided the titles, none of which were stamped “Salvage,” as would be customary for a salvage title.
DM & M repaired both cars and sent them to the Greater New Orleans Auto Auction, where the Villager was sold. On or about January 24, 1996, DM & M was notified that when the Auto Auction attempted to transfer title to the new owner, the title had come in marked “Salvage.” The title could not be changed, and the purchaser wanted a refund. On March 10, 1996, the Auto Auction returned the Saturn due to an unannounced salvage title.
DM & M filed suit on January 10, 1997. An exception of prescription was heard and denied. The trial court found in favor of DM & M, awarding damages in the amount of $5,955.00, attorney’s fees in the amount of $4,000.00 and costs. From this judgment, Modern Auto appeals, citing four assignments of error.
|3In the first assignment of error, Modern Auto argues that the trial court erred in denying the plaintiff’s exception of prescription. Modern Auto points out, correctly, that the vehicles were purchased in 1995 and the petition was not filed until 1997; whether DM & M claims fraud or redhibitory defect as its cause of action, the prescriptive period to file either would be one year.
From our review of the case, it appears that DM & M’s action is most appropriately categorized as one of redhibitory defect in the title of the vehicles. Any seller warrants the buyer against redhibitory defects, or vices, in the thing'sold; a defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect, or else of such diminished usefulness and value that the buyer would only have purchased the thing for a lesser price. The existence of a redhibitory defect gives the buyer the right to obtain *1009 rescission of the sale where the thing is rendered useless, or the right to have the price reduced where the thing is found to be of lesser value as a result. La. C.C. Art. 2520.
The prescriptive period, for an action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day of delivery of the thing, or one year from the day the defect was discovered by the buyer, whichever comes first. Against a seller who knew or is presumed to have known of the defect, the action prescribes in one year from the day the defect was discovered by the buyer. La. C.C. Art. 2534.
|4Regardless of Modern Auto’s knowledge or ignorance of the vehicles’ salvage titles, the prescriptive period for an action in redhibition against Modern Auto would not prescribe until one year after DM & M had notice of the defect in the title. DM & M became aware of the first defective title on January 26, 1996; suit was filed on January 10, 1997. DM & M therefore filed suit within one year of discovering the redhibitory defect. This assignment of error is without merit.
Modern Auto’s second assignment of error alleges that the trial court erred in ruling on the case without allowing the defendant to put on his entire case. At trial on this matter, the judge allowed DM & M to present its case in full, but ruled on the case before Modern Auto’s first witness had finished with cross-examination. The trial judge not only ruled on the legal merits of the case, but found Modern Auto guilty of fraud and awarded penalties.
DM & M counters by pointing out that Modern Auto did not object to the court’s actions at the time of trial; failure to object amounts to a waiver of the error and therefore prohibits Modern Auto from raising the subject on appeal. Grelle v. Youngblood, 96-2210 (La.App. 4 Cir. 3/26/97), 691 So.2d 279. This assignment, too, is without merit.
In the third assignment of error, Modern Auto argues that the trial court misapplied the law of risk in sales to the instant case. La. C.C. Art. 2467 provides that the risk of loss of a thing sold owing to a fortuitous event is transferred from the seller to the buyer at the time of delivery; this risk is so transferred even when the seller has delivered a nonconforming thing, unless the buyer acts in the manner | ¿required to dissolve the contract. Modern Auto implies that the State’s later assignment of a salvage title qualifies as a “fortuitous event.” We disagree with that characterization; a salvage title merely states something about the inherent quality of the vehicle. It confirms a defect that already exists, whether or not the seller knows of that defect. These vehicles were not changed from good title vehicles to salvage title vehicles by any event occurring after the sale; their categorization as salvage title vehicles was simply made known after the sale. Article 2467 is therefore inapplicable to the case at hand, and this assignment of error is without merit.
In the final assignment of error, Modern Auto argues that the trial court demonstrated a marked bias toward plaintiff DM & M, in detriment to the defendant. Modern Auto refers generally to incidents not contained in the record, and suggests that a reading of the transcript reveals the trial court’s bias.
Our review of the transcript does not suggest that this was, in fact, the case. The trial court was most keenly interested in one point of law - whether or not Modern Auto had tendered good title to DM & M; focusing upon this point, which is in fact dispositive of the case, does not indicate personal bias against Modern Auto. Furthermore, as DM & M points out, the Uniform Rules of the Courts of Appeal, Article 2-12.4, require that the appellant’s brief cite the record specifically in order to *1010 substantiate such an allegation. In brief, Modern Auto makes only one specific citation to the record, and that particular excerpt does not strongly support this allegation. This assignment of error is therefore also without merit.
|fiWithout specifically addressing the issue as an assignment of error, in brief Modern Auto also raises the question as to whether the evidence presented at trial was sufficient to support a finding of fraud on the part of Modern Auto. Modern Auto’s representatives asserted, and one of plaintiffs own witnesses confirmed, that the actual “salvage title” was not issued by the State of Louisiana until after DM & M’s attempts to sell the vehicles. Therefore, the vehicles’ actual status as salvage title vehicles had not yet been determined by the state; the record is absent any concrete proof that Modern Auto had knowledge that these were in fact salvage title vehicles.
A finding of fraud only requires proof by a preponderance of the evidence. La. C.C. Art. 1957. However, after our review of the record, we find that DM & M failed to meet this burden of proof. DM & M and Modern Auto had done business together several times before, to the satisfaction of both parties. No evidence was presented at trial to indicate that Modern Auto had knowledge of the salvage title status of the vehicles sold to DM & M; as stated above, both sides testified at trial that the salvage titles were not issued until DM & M later attempted to sell the vehicles.
In its judgment, the trial court did not specifically indicate that Modern Auto was guilty of fraud; however, Modern Auto was ordered to pay attorney’s fees in the amount of $4,000.00, a penalty for fraud. In so finding, the trial court was in error; we therefore reverse the award of attorney’s fees to DM & M.
In all other respects, the judgment of the trial court is affirmed.
|7AFFIRMED IN PART; REVERSED IN PART.

. This friend, Richard Wilkie, purchased a jeep, also from Modern Auto, that was also revealed to have a salvage title; although originally a party to this claim, Wilkie was at the time of trial no longer involved in the litigation.